Submitted November 15, 2016, affirmed January 11, 2017

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

EARL SCOTT CHESNUT,
*Defendant-Appellant.*

Marion County Circuit Court
14C47175; A158551

388 P3d 1237

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Andrew D. Robinson, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Joanna L. Jenkins, Assistant Attorney General, filed the brief for respondent.

Before Duncan, Presiding Judge, and DeVore, Judge, and Garrett, Judge.

## DUNCAN, P. J.

Defendant appeals the judgment in this criminal case, raising three sentencing-related assignments of error. We reject the second and third assignments without discussion. In the remaining assignment of error, defendant contends that the trial court plainly erred by entering separate convictions on two counts that should have merged. *See* ORS 161.067 (specifying requirements to prevent merger). The state argues that, in the circumstances of this case, it is not plain that the judgment the trial court entered "has the effects ascribed to it by defendant." As we will explain, even if we were to conclude that the judgment's wording does impose separate convictions as defendant contends, and that that constituted plain error, we would decline to exercise our discretion to review the claim of error in these unique circumstances.

The relevant facts are procedural and undisputed. After a bench trial, the court found defendant guilty of, among other things, two counts of felony stalking, Counts 4 and 5.[1] During sentencing, the state told the court that those counts "would merge." The trial court apparently agreed: It later announced a single sentence on "the stalking charge[s] that merge." Following the court's pronouncement of sentence, it had the prosecutor prepare the judgment. She requested "a few minutes," explaining, "I am new at filling out these judgments and I will probably have [defense counsel] review them." The court responded, "I think that is appropriate. You can have extra time for that."

The relevant portions of the fill-in-the-blanks judgment forms that addressed Counts 4 and 5 were completed as follows, with handwritten portions represented here by italics. A portion of a page addressing Count 4 states in part, "Defendant has been convicted of *stalking*, as alleged in Count *4*." A separate page addressing Count 5 is filled out similarly, stating that defendant "has been convicted of

---

[1] Defendant was charged with coercion (Count 1), fourth-degree assault constituting domestic violence (Count 2), interference with making a report (Count 3), stalking (Counts 4 and 5, alleged as felonies, ORS 163.732(2)(b)), and contempt of court (Counts 6 and 7). The trial court found defendant guilty on all counts.

*stalking,* as alleged in Count 5." That page, however, also has a handwritten notation at the top, stating, *"merged with Count 4."*

After the brief recess, the court stated that it had reviewed the judgment forms that were submitted, and it asked defense counsel whether she had reviewed them. Defense counsel told the court that she had reviewed the proposed judgment documents. She did not make any objection to them. The court then stated, "They appear to be consistent with my rulings and the sentence, and I am signing them. If there are other questions and/or issues, we can submit any amended documents."

Later, an amended judgment was entered to add restitution. After defendant filed his notice of appeal, this court granted the trial court leave to enter an appealable judgment, because the amended judgment that had been entered addressed only Count 1, and did not contain dispositions on the other counts. Defendant filed a motion for the court to enter an appealable judgment, and the trial court did so, repeating the wording of the originally entered judgment on Counts 4 and 5.

Defendant now argues that the trial court plainly erred, because the judgment, as it is worded, imposes separate convictions on Counts 4 and 5.[2] The state has not disputed, below or on appeal, that the guilty verdicts on those counts merge, nor does it dispute that the court intended to merge them. The state argues only that the court did not plainly err, because "[t]he judgment plainly states that Count 5 'Merged with Count 4,'" and that, "[t]herefore, there is no separate conviction for Count 5[,] and the judgment does not misstate the nature and extent of defendant's

---

[2] In these particular circumstances, because the trial court ruled that the counts did merge, defendant's argument on appeal—that the judgment erroneously imposes separate convictions—reduces to a claim that the wording of the judgment is erroneous. Defendant reviewed, and did not object to, that wording. Thus, this is not a case where a defendant lacked the opportunity to object before an erroneous term appeared in a judgment. *See, e.g., State v. Lewis,* 236 Or App 49, 52, 234 P3d 152, *rev den,* 349 Or 172 (2010) (preservation not required when claimed sentencing error appeared for the first time in judgment). It also presents different considerations from an unpreserved merger claim where the issue was not raised below and there is, consequently, no ruling on that issue.

conduct." It further argues that "[a]t a minimum this point is not obvious and beyond dispute."

We may consider an unpreserved claim of error when it constitutes plain error. ORAP 5.45(1); *see State v. Pass*, 264 Or App 583, 585-86, 333 P3d 1139 (2014) ("An unpreserved error is reviewable as plain error if (1) the error is one of law; (2) the legal point is obvious—that is, not reasonably in dispute; and (3) to reach the error, we need not go outside the record or choose between competing inferences to find it." (internal quotation marks, brackets, and citation omitted)). Even if a claimed error constitutes plain error, however, we must also consider whether to exercise our discretion to correct it. *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 382, 823 P2d 956 (1991). In doing so, we consider a number of factors, including

> "the competing interests of the parties; the nature of the case; the gravity of the error; the ends of justice in the particular case; how the error came to the court's attention; and whether the policies behind the general rule requiring preservation of error have been served in the case in another way[.]"

*Id.* at 382 n 6. "Other considerations include whether the defendant in some way encouraged the trial court to make the error; whether the defendant made a strategic choice not to object; and whether the error could have been remedied if raised below." *State v. Rudnick*, 268 Or App 125, 133, 341 P3d 211 (2014) (citing *State v. Fults*, 343 Or 515, 523, 173 P3d 822 (2007)).

Even assuming that the judgment in this case could be read to impose separate convictions on the merged counts, *see State v. Lepierre*, 235 Or App 391, 395, 232 P3d 982 (2010) (explaining that "'merger of convictions' does not exist"; when two counts should result in a single conviction, the court should merge guilty verdicts, not convictions, and a single conviction should be imposed on the merged counts), and that that constitutes plain error, under the particular circumstances in this case we decline to exercise our discretion to correct the error.

Defendant had the opportunity to consult with the state on the wording of the judgment, and the court

specifically invited defense counsel to raise any concerns, at sentencing or afterward. We also note that the trial court register does not reflect the entry of a "conviction" for Count 5.[3] Rather, it lists a finding of guilt for that count, and it notes the disposition as "Merged." A separate entry also states, "Merged Charge" and lists "5. Stalking." (Boldface omitted.)

Further, in these circumstances, had the error been raised below, it could have been—and still could be—corrected in a way that would consume less time and resources from the parties and the courts. The purported error is more akin to a clerical error than to an erroneous application of the law of merger. The court ruled in defendant's favor, and the parties considered how to word the judgment to give effect to that ruling.[4] The court agreed that the judgment, as it was filled out, effectuated its ruling,

---

[3] The register is part of the trial court record. ORS 7.010(1) ("The records of the circuit courts include a register and jury register."); ORS 7.020 (defining the register). As a result of the transition to the e-court system, the court register "is the information displayed or printed in the case summary" in the electronic case file. ORS 7.095 (authorizing chief justice to promulgate rules governing maintenance of register using electronic data processing equipment); Chief Justice Order No. 12-043 (designating the electronic "register" in circuit courts and the tax court).

The clerk of the court is required to document the trial court's actions in the register. ORS 7.020; *see also* ORS 137.170 (providing that in criminal cases, "[i]f the judgment is upon a determination of a conviction of an offense, the clerk shall state briefly in the register the offense for which the defendant was convicted"). We have held that the register is sufficiently reliable evidence of the existence of a judgment of conviction that it can be used to establish the existence of a prior conviction for the purpose of OEC 609. *State v. Thomas*, 257 Or App 770, 772-74, 308 P3d 270 (2013).

[4] We note that a trial court's use of the term "convicted" in a judgment to mean anything other than the imposition of a judgment of conviction creates at least a significant risk of that judgment being interpreted to have imposed more convictions than intended. This can create problems both for defendants and for the courts.

For defendants, it creates the risk that his or her criminal history will be misstated or miscalculated. This can have consequences for sentencing in any subsequent criminal case. For the courts, it affects judicial efficiency. If a trial court uses the term "convicted" in a judgment to refer to a finding or plea of guilt, rather than to a judgment of conviction, it will inevitably create more work for any subsequent court called upon to interpret that judgment; this can consume a not insubstantial amount of judicial resources.

The Uniform Criminal Judgment (UCJ) includes a section for counts that are disposed of with no conviction, which could help to avoid the problem. The Oregon Judicial Department has described the UCJ as follows:

and defendant had no objection to that wording at the time. The court invited the parties to submit later-arising issues to it and seemed to be amenable to addressing such issues by amending the judgment. ORS 138.083 provides a process for requesting trial-court correction of a clerical error or erroneous term in a judgment. Under appropriate circumstances, we consider a defendant's failure to avail himself or herself of that process as "'one factor pertaining to the court's exercise of discretion to correct the error.'" *State v. Delgado*, 239 Or App 435, 438, 245 P3d 170 (2010), *rev den*, 350 Or 423 (2011) (quoting *Holloway v. Gower*, 225 Or App 176, 184, 200 P3d 584 (2009)); *see also State v. Truong*, 249 Or App 70, 75, 274 P3d 873, *rev den*, 352 Or 565 (2012), *cert den*, ___ US ___, 133 S Ct 2032 (2013). Correcting the error on appeal would require resentencing, *State v. Skaggs*, 275 Or App 557, 560, 364 P3d 355 (2015), *rev den*, 359 Or 667 (2016), which would consume more parties' and judicial resources—particularly because, given its positions below and on appeal, it does not appear that the state would have any reason to oppose a motion under ORS 138.083.

Under all of the circumstances in this case, even assuming that the asserted error constitutes plain error, we decline to exercise our discretion to correct it. Accordingly, we affirm.

Affirmed.

---

"Uniform Criminal Judgment (UCJ). Commonly referred to as the 'UCJ,' it has been a standardized form used by OJD trial courts since before the start of the Oregon eCourt program. It is the standard judgment document used to sentence any defendant convicted of a felony or misdemeanor in Oregon. In the Odyssey software system utilized by Oregon eCourt, the UCJ is created by generating a report based on plea, disposition, and sentence data entry completed by court staff."

*Oregon eCourt* Glossary, Oregon Courts, http://courts.oregon.gov/Oregonecourt/pages/OReCourtGlossary.aspx#U (accessed Dec 30, 2016) (boldface omitted).