Argued and submitted November 10, reversed and remanded December 31, 2014

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

MITCHELL ANTHONY RUDNICK,
*Defendant-Appellant.*

Washington County Circuit Court
C092508CR; A153786

341 P3d 211

Kyle Krohn, Deputy Public Defender, argued the cause for appellant. With him on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Jamie K. Contreras, Assistant Attorney-in-Charge, argued the cause for respondent. With her on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Sercombe, Presiding Judge, and Hadlock, Judge, and Tookey, Judge.

SERCOMBE, P. J.

**SERCOMBE, P. J.**

Following a guilty plea, defendant was convicted of felony assault in the fourth degree, ORS 163.160 (Count 2), and interference with making a report, ORS 165.572 (Count 3). The court sentenced defendant to three years of probation on Count 2, and suspended imposition of sentence and imposed three years of probation on Count 3. Defendant later violated the terms of his probation. The court continued probation on Count 2, and purportedly imposed, but suspended execution of, a 120-day jail sentence as a condition of continued probation on Count 3. Still later, defendant was sentenced to jail after his probation was revoked because of new admitted violations.

In that sentencing judgment, defendant was sentenced to one year in jail on Count 3, and given a concurrent sentence of six months in jail and two years of post-prison supervision on Count 2. On appeal, defendant contends that the court plainly erred in sentencing him to a longer term of incarceration on Count 3 (one year) than was imposed but suspended (120 days) in the judgment that continued probation. The state claims that any error is not plain because it is not clear if the court imposed but then suspended execution of the 120-day sentence in that judgment.

"We review a claim that the sentencing court failed to comply with the requirements of law in imposing a sentence for errors of law." *State v. Capri*, 248 Or App 391, 394, 273 P3d 290 (2012); ORS 138.222(4)(a). Because we conclude that the court plainly erred in sentencing defendant to a jail term on Count 3 that was longer than the sentence previously imposed, and that it is appropriate to exercise our discretion to remedy that error in this case, we reverse and remand.

The background facts are undisputed. Defendant was indicted for various crimes arising from domestic violence against his wife (the victim). He pleaded guilty to felony assault in the fourth degree (Count 2) and misdemeanor interference with making a report (Count 3), and the remaining charges against him were dismissed. On December 1, 2009, the trial court sentenced defendant to the presumptive sentence of three years of probation on Count 2,

and suspended imposition of the sentence on Count 3 with three years of probation. One of the conditions of probation was that defendant have no direct or indirect contact with the victim.

At a hearing on September 9, 2010, the court found defendant in violation of that "no contact" condition of probation. At the same time, defendant was determined to have violated a restraining order obtained by the victim after the December 2009 conviction. The state recommended that defendant be placed on probation for the restraining order violation, and that he serve 10 days in jail for the probation violation. The court rejected that recommendation. It explained:

"On Count 3, I'm going to give him his final sentence. 120 days suspended execution, all alternative sanctions.

"So, in English, you come back with a contact violation, you're very, very lucky, you have 120 days minimum. And it could be longer. Do you understand that?

"THE DEFENDANT:   Yes, I do.

"THE COURT:   Okay. Now, and obviously if you have any (indiscernible) problems, the same thing would apply. I'm particularly worried about contact violations.

"* * * I'm adding the following conditions: You may not have any contact, directly or indirectly, with [the victim's boyfriend].

"There's a $25 probation violation fee, and a $230 attorney fee. Those are conditions of both counts' probations. And you have the same payment schedule that you had originally * * * on that case."

The court then entered a judgment that modified the December 2009 judgment. That September 14, 2010, judgment recited that defendant admitted a violation of probation and had been found in violation, that probation was continued "as originally ordered" "with additional/ modified conditions listed below." The judgment referenced the conviction for interference with making a report (Count 3) with a circled "3" designation. It imposed an additional condition of no contact with the victim's boyfriend. In a section of the judgment entitled, "COMMITMENT AS CONDITION

OF PROBATION," a box was checked that read, "Suspend execution of jail sentence as a condition of probation (misdemeanor)" with a handwritten notation setting out a circled "3," the designation for Count 3, with "120 DAYS—ALL ALT[.]"[1]

In 2012, defendant violated the conditions of his probation by failing to pay his imposed financial obligations and violating a Washington criminal statute. Defendant admitted those violations at a probation revocation hearing in February 2013. At that hearing, his parole officer made recommendations to the court:

"[Defendant] had been in custody since June 14, 2012, in Washington State. That's when he was arrested. His last hearing on 9/9/10, he was given a 120-day suspended sentence on the misdemeanor count. We're certainly asking that that be imposed, and even the maximum sentence on that case, if the Court, you know, feels it necessary in this case to give him a year sentence.

"We're asking for six months on the felony, revocation. He's a 6-G. That would be two years post-prison supervision. And we would ask that at least a portion of his sentence be without programs."

The state agreed:

"The maximum sentence the Court can give the defendant would be a year on the misdemeanor charge and six months on the Felony Assault 4, with post-prison supervision to follow.

"We would recommend that the defendant get the one-year sentence, the six months to run concurrent, and then we'd leave it to the Court regarding programming, regarding that."

Defense counsel argued that defendant was incarcerated on the Washington conviction, and that the court should "allow him to continue on probation * * * avoiding a lengthy time in incarceration, which wouldn't do him any good." The court, however, imposed the sentence recommended by the state. On Count 3, it revoked defendant's

---

[1] The Oregon Judicial Information Network docket entry for the probation revocation hearing notes that "ct 3 susp execution 120 days."

probation and sentenced him to a jail term of one year; on Count 2, the court revoked defendant's probation and sentenced him to a concurrent jail term of six months with two years of post-prison supervision.

The court explained:

"And, [defendant], I don't know whether or not you expected to receive a jail sentence on the revocations of those probations, but I'll tell you that I could have run that sentence consecutive to the sentence that you're currently serving. I declined the invitation, or the opportunity to do that.

"And I would just simply say that I really don't believe that these probations are being served, nor are you benefitting, because of the non-completion of the treatment previously, and the new law violation.

"I suppose what I'm saying simply is I just think you ought to do your time, and be done."

On appeal, defendant contends that the court plainly erred in sentencing him to a greater term of incarceration (one year) on Count 3, the misdemeanor conviction, than previously imposed by the judgment suspending execution of a 120-day sentence. Defendant relies on ORS 137.545(5)(a), which provides:

"For defendants sentenced for felonies committed prior to November 1, 1989, and for any misdemeanor, the court that imposed the probation, after summary hearing, may revoke the probation and:

"(A) If the execution of some other part of the sentence has been suspended, the court shall cause the rest of the sentence imposed to be executed.

"(B) If no other sentence has been imposed, the court may impose any other sentence which originally could have been imposed."

Thus, ORS 137.545(5)(a)(A) requires that, upon revocation of probation, a court "shall cause *** to be executed" an earlier-imposed misdemeanor sentence, the execution of which has been suspended as a condition of probation.

No case corroborates that plain meaning. But Oregon courts have construed the predecessor statute to ORS 137.545(5) to the same effect. *Former* ORS 137.550(4) (1965),[2] in effect prior to the 1989 enactment of the sentencing guidelines, Or Laws 1989, ch 790, § 17, provided that, after revocation of probation, "the court, after summary hearing, may revoke the probation and suspension of sentence and cause the sentence imposed to be executed or, if no sentence has been imposed, impose any sentence which originally could have been imposed." In *State v. Stevens*, 253 Or 563, 564, 456 P2d 494 (1969), a trial court suspended execution of a sentence of 18 months' imprisonment and placed the defendant on probation for three years. When that probation was revoked, the court sentenced the defendant to that term of imprisonment to run consecutively to another sentence that the defendant was already serving. On appeal, applying *former* ORS 137.550, the Supreme Court held that

> "[i]t is clear that under this statute a court that has decreed the punishment to be imposed and then placed a defendant upon probation is limited to causing execution of the judgment. The power of a court to amend its judgments after expiration of the term is limited. No statute authorizes the amendment of a previous sentence after probation is granted.
>
> "That portion of the sentence which provides that the sentence [resulting from the probation revocation] is to run consecutively with the sentence defendant is serving having been made without authority is surplusage and severable."

*Stevens*, 253 Or at 565.

Similarly, in *State v. Anderson*, 149 Or App 506, 508, 945 P2d 594 (1997), the defendant was sentenced to indeterminate periods of incarceration, not to exceed five years, on four counts of sexual abuse in the first degree. The execution of that sentence was suspended and the defendant was placed on probation. The probation was then revoked

---

[2] *Former* ORS 137.550 was renumbered as ORS 137.545 in 1999. The text of *former* ORS 137.550 remained substantially unchanged between the time the court considered it in *State v. Stevens*, 253 Or 563, 456 P2d 494 (1969), and the enactment of the sentencing guidelines in 1989.

and the defendant was resentenced to serve consecutive sentences on the four convictions with a minimum term of two years for each sentence. We concluded that "the trial court lacked authority to amend a sentence following revocation of probation," and exercised our discretion to correct that error. *See also State v. Newell*, 238 Or App 385, 393, 242 P3d 709 (2010) (once a probationary sentence has been executed, a trial court lacks authority to modify the sentence).

Defendant urges the same result here. He did not object to the court's announced intent to sentence him to the one-year jail term on Count 3, and, thus, did not preserve his assignment of error in that sentencing. ORAP 5.45 requires the court to consider only claims of error that are "preserved in the lower court * * * provided that the appellate court may consider an error of law apparent on the record." Under *State v. Brown*, 310 Or 347, 355, 800 P2d 259 (1990), an error is obvious or plain if (1) the error is one of law; (2) the error is "not reasonably in dispute"; and (3) the error appears on the record, meaning that "[w]e need not go outside the record or choose between competing inferences to find it[.]"

Defendant contends that the sentencing error is plain, and that the gravity of the error, a prolonging of defendant's post-prison supervision and the lack of any countervailing factors, warrant judicial correction of the error.[3] The state, for its part, does not dispute that the correctness of defendant's sentencing is an issue of law that can be determined from the record, or offer any reason why we should not rectify any sentencing error. Instead, the state argues that it is not apparent that the court imposed, but suspended execution of, the 120-day sentence in the September 14,

---

[3] Defendant has already served his one-year jail sentence. His two-year post-prison supervision began to run after he was released from jail. *See* OAR 213-005-0002(3) ("The term of post-prison supervision shall begin upon completion of the offender's prison term or such term as directed by the supervisory authority."). If defendant's term of incarceration on Count 3 is reduced from one year to 120 days, defendant's term of post-prison supervision will be calculated from the end of the six-month term of confinement for the assault conviction (Count 2), freeing defendant from an additional six months of state supervision. Thus, defendant's appeal is not moot, notwithstanding his release from jail. *See Baty v. Slater*, 161 Or App 653, 984 P2d 342 (1999), *adh'd to on recons*, 164 Or App 779, 995 P2d 1176, *rev den*, 331 Or 191 (2000) (appeal not moot when correcting an imposed term of imprisonment would reduce the duration of post-prison supervision).

2010, judgment. The state notes that, in pronouncing that sentence, the court also expressed that, if there were further probation violations, the 120-day sanction would be a "minimum" and "could be longer," thus evincing an intent to impose a sentence later if probation were revoked.

The trial court's actions speak louder than its words. *See State v. Jackson,* 141 Or App 123, 126, 917 P2d 34 (1996) (explaining that the description of a sentence in a written judgment prevails over oral statements by a court that underlie the judgment). In fact, the court entered a judgment that unequivocally imposed a "120 DAYS—ALL ALT" jail sentence for Count 3, and "suspend[ed] execution of [that] jail sentence as a condition of probation," all as part of a section of the judgment entitled, "COMMITMENT AS A CONDITION OF PROBATION." Had the court intended to suspend imposition of a jail sentence, and merely continue probation, it would have left blank that portion of the judgment.

Moreover, and contrary to the state's suggestion, even the words of the sentencing court point to this same end. In announcing that sentence, the court unambiguously said, "I'm going to give him his final sentence. 120 days suspended execution, all alternative sanctions." Later, the court "suspend[ed] the imposition of sentence" for the restraining order violation, indicating a clear distinction from a sentence with a "suspended execution." The court's admonition that, if there was a further probation violation, the 120-day sentence "could be longer" was correct. If defendant violated his probation, he could be—and was—sentenced to a six-month term of incarceration on the assault conviction. Thus, the error was plain.

Having reached that conclusion, we must determine whether to exercise our discretion to review the plain error. In deciding whether to review an unpreserved error, we apply the nonexclusive factors articulated by the Supreme Court in *Ailes v. Portland Meadows, Inc.,* 312 Or 376, 823 P2d 956 (1991). Those include

"the competing interests of the parties; the nature of the case; the gravity of the error; the ends of justice in the particular case; how the error came to the court's attention;

and whether the policies behind the general rule requiring preservation of error have been served in the case in another way[.]"

*Id.* at 382 n 6. Other considerations include whether the defendant in some way encouraged the trial court to make the error; whether the defendant made a strategic choice not to object; and whether the error could have been remedied if raised below. *State v. Fults,* 343 Or 515, 523, 173 P3d 822 (2007).

We conclude that it is appropriate in this case to exercise our discretion to correct that plain error. First, the consequence of the error—exposing defendant to six months additional supervision—is grave. *See State v. Delgado,* 239 Or App 435, 439, 245 P3d 170 (2010), *rev den,* 350 Or 423 (2011) (concluding that the gravity of the error in requiring the defendant to serve additional months of post-prison supervision was "salient" in deciding whether to exercise *Ailes* discretion). Furthermore, the state has no interest in prolonging defendant's supervision. As well, the purposes of preservation were served when the earlier sentence was pointed out to the sentencing court by defendant's probation officer ("His last hearing on September 9, 2010, he was given a 120-day suspended sentence on the misdemeanor count."); the legal effect of that sentence was for the court to decide. Finally, the error can be corrected easily by a slight modification of the judgment, thus promoting the ends of justice with only minimal consumption or disruption of judicial resources.

Accordingly, we reverse and remand the judgment to the trial court to change the "1 year" term of incarceration for Count 3 to "120 days."

Reversed and remanded.